(No. 50479.-

THE PEOPLE OF THE STATE OF ILLINOIS, Appellant,
v. ARTHUR R. ROBERTS, Appellee.—THE PEOPLE
OF THE STATE OF ILLINOIS, Appellant, v.
CHESTER L. GRIZZLE, Appellee.

*Opinion filed Feb. 20, 1979.—Rehearing denied March 30, 1979.*

MORAN, J., concurring in part and dissenting in part.

William J. Scott, Attorney General, of Springfield (Donald B. Mackay, Melbourne A. Noel, Jr., and Steven Jay Teplinsky, Assistant Attorneys General, of counsel), for the People.

Richard J. Wilson, Deputy Defender, of the Office of State Appellate Defender, of Springfield (Barbara A. Chasnoff and Daniel D. Yuhas, Assistant Defenders, of

counsel), for appellees.

MR. JUSTICE RYAN delivered the opinion of the court:

These consolidated cases again present the problem of attempted-murder instructions which we considered recently in *People v. Harris* (1978), 72 Ill. 2d 16, *People v. Trinkle* (1977), 68 Ill. 2d 198, and *People v. Muir* (1977), 67 Ill. 2d 86. Both defendants here, Arthur R. Roberts and Chester L. Grizzle, were convicted at jury trials of attempted murder in violation of section 8—4 of the Criminal Code of 1961 (Ill. Rev. Stat. 1975, ch. 38, par. 8—4). The appellate court consolidated these appeals—Roberts' on direct appeal from a conviction entered by the Logan County circuit court, Grizzle's on appeal from a denial of a petition under the Post-Conviction Hearing Act (Ill. Rev. Stat. 1977, ch. 38, par. 122—1 *et seq.*) in the Jersey County circuit court. The appellate court reversed the trial courts and remanded for new trials, holding that the trial judges erred in their attempted-murder instructions. (56 Ill. App. 3d 667.) Both the majority and the concurring opinions in our recent *Harris* case support the appellate court's finding of error in the instructions given. We granted the People leave to appeal and now reverse the appellate court. The issue before us is whether a criminal defendant can raise on direct appeal, or on appeal from the dismissal of a petition for a post-conviction hearing, alleged error in jury instructions when that error was not objected to at trial and not preserved in the post-trial motions.

A jury in Logan County found Arthur Roberts guilty of attempted murder. At his trial, the complaining witness, a truck driver, testified that he had been driving on the interstate highway near Lincoln on the night of the incident. Late that night his truck had jockeyed for highway position for a considerable length of time with a

car driven by Roberts, a car in which Carla Rackers rode as a passenger. About 2 a.m., the truck came alongside the driver's side of the car in an attempt to pass. Suddenly the truck driver heard an extremely loud crashing sound against the passenger door of his truck, and the car then accelerated rapidly away from the truck. Both the driver of the car and his passenger were seen to be in the car's front seat. Moments later at a truck stop, the complaining witness found a large bullet hole in the truck's door directly in line with his body. He called the police. State patrol officers arrested Roberts shortly thereafter, searched his car and found, among other guns, a 357 Magnum Colt revolver—a powerful handgun. At trial, the prosecution proved that the bullet which pierced the truck door's outer panel, and severely dented the inner panel, had been fired from that revolver.

Defendant Roberts, and his 17-year-old passenger, Carla Rackers, also testified at trial. Both admitted the gun was fired from the car, but both said Carla Rackers fired from the rear seat, where she had been taking a nap when she was disturbed by the truck. She had not been charged with attempt. The State contended that she handed the gun to Roberts and was thus tried only for conspiracy.

The court's instructions to the jury included the following mandatory instructions on the offense of attempted murder:

> "To sustain the charge of attempt, the State must prove the following propositions:
>
> First: That the defendant performed an act which constituted a substantial step toward the commission of the crime of murder; and
>
> Second: That the defendant did so with intent to commit the crime of murder.
>
> If you find from your consideration of all the evidence that each of these propositions has been proved beyond a reasonable doubt, then you should find the defendant guilty.

> If, on the other hand, you find from your consideration of all the evidence that any of these propositions has not been proved beyond a reasonable doubt, then you should find the defendant not guilty."

The court also gave the following instruction defining murder:

> "A person commits the crime of murder who kills an individual if, in performing the acts which cause the death,
>> (1) he intends to kill or do great bodily harm to that individual; or
>> (2) he knows that such acts create a strong probability of death or great bodily harm to that individual."

As we held in *Harris,* it was error to give this instruction defining murder. Since attempted murder requires a specific intent to commit the offense of murder, which necessarily involves a killing, it is obvious that the offense of attempted murder cannot be construed as incorporating the alternative definitions of murder contained in section 9—1(a) of the Criminal Code of 1961 (Ill. Rev. Stat. 1977, ch. 38, par. 9—1(a)), which incorporates a state of mind other than an intent to kill. (*People v. Harris* (1978), 72 Ill. 2d 16, 24.) Roberts did not object to the giving of this instruction and did not raise that issue in his post-trial motion.

An incident of shooting also resulted in Grizzle's conviction of attempted murder in Jersey County. Witnesses testified at his trial that Grizzle had experienced a great deal of trouble with a car recently purchased from the complaining witness. On the day of the shooting a heated conversation occurred between the two men regarding that car. Late that evening 10 to 12 shots were fired into the complaining witness' house, many of those shots narrowly missing the witness, his wife, and his small child as they moved around the house seeking safer locations.

The jury instructions given in Grizzle's case were quite similar to the instructions given in Roberts' case, and contained the same error. Grizzle's trial also occurred before this court's series of attempted-murder decisions. As in Roberts' case, the defendant did not object to the instructions at the trial and did not preserve the objection in a post-trial motion. On direct appeal from his conviction, Grizzle did not raise the point and his conviction was affirmed. In a subsequent petition for a post-conviction hearing, Grizzle's counsel again did not raise the issue and relief was denied. However, on appeal from this denial, new counsel for Grizzle raised the issue of the instructions, and the appellate court considered this issue. On this appeal, we are not concerned with the correctness of the appellate court's action in doing so. See Ill. Rev. Stat. 1977, ch. 38, par. 122—3.

In *People v. Goerger* (1972), 52 Ill. 2d 403, this court was faced with an issue similar to that raised in Grizzle's appeal. In that case the defendant had not objected to the giving of an instruction at trial and there had been no direct appeal. The error in the giving of the instruction was raised in a petition under the Post-Conviction Hearing Act. This court noted that the error was one that could have been raised on direct appeal and that the defendant's failure to raise the issue on direct appeal constituted a waiver. Also, the court noted that the giving of a defective instruction did not effect the substantial denial of constitutional rights cognizable under the Post-Conviction Hearing Act. This court also held in *People v. Johndrow* (1968), 40 Ill. 2d 288, that the failure to give a tendered instruction did not constitute a denial of a constitutional right or present a question which would justify relief under the Post-Conviction Hearing Act.

Merely alleging that the trial error, or the error in the giving of an instruction, constituted a constitutional violation does not elevate these errors to constitutional

status, qualifying them for review under the Post-Conviction Hearing Act. We will reserve for discussion below the question of whether the failure to object to the instruction at trial waived the defendant's right to raise as error on review the giving of the defective instruction. We need not consider that issue in connection with Grizzle's post-conviction petition. His failure to raise the question on direct appeal prevents him from raising it in the post-conviction petition. The affirmance on direct appeal is *res judicata* as to all issues that were raised or that could have been raised on appeal. (*People v. Rose* (1969), 43 Ill. 2d 273, 279; *People v. Ashley* (1966), 34 Ill. 2d 402, 408; ABA Standards, Post-Conviction Remedies sec. 6.1 and Commentary, at 88-89 (1968).) Also, the giving of this defective instruction did not constitute the denial of a constitutional right cognizable under the Post-Conviction Hearing Act.

The concept of waiver presents the primary question for resolution in Roberts' case. A fundamental concept of our adversary system is that counsel must object at trial to errors. Thus, we must necessarily recognize that counsel may "waive" the right to raise certain errors in later proceedings by failure to object to those errors at trial. *People v. Coles* (1979), 74 Ill. 2d 393; *People v. Precup* (1978), 73 Ill. 2d 7, 16-17; *People v. Pickett* (1973), 54 Ill. 2d 280. See generally, Spritzer, *Criminal Waiver, Procedural Default and the Burger Court*, 126 U. Pa. L. Rev. 473 (1978).

Our cases hold that failure to make an objection at trial to an error in jury instructions waives the issue for appeal. (*People v. Underwood* (1978), 72 Ill. 2d 124, 130, and cases cited therein (*Underwood* involved the failure to define "reasonably believes"); *People v. Mallett* (1970), 45 Ill. 2d 388 (instruction on evaluation of confession); *People v. Lyons* (1967), 36 Ill. 2d 336 (instruction on justifiable use of force).) In this context, we observe that

the Seventh Circuit Court of Appeals has rigidly enforced the waiver rule, even under the broad Federal Rule of Criminal Procedure 52(b) standard. Rule 52(b) corresponds to our Rule 615. *United States v. Jackson* (7th Cir. 1978), 569 F.2d 1003 (waived possible error in self-defense instruction); *United States v. Knippenberg* (7th Cir. 1974), 502 F.2d 1056 (waived error on failure to define "wilfully"); *United States v. Cantu* (7th Cir. 1972), 501 F.2d 1019 (waived error regarding elements of the offense).

The reason for this waiver rule, as stated in many of our appellate court cases, is that timely objections to defective instructions permit the court to correct the defects before the instructions are given, and do not therefore permit a party failing to object to gain the advantage of obtaining a reversal based upon his own failure to act. See *Finfrock v. Eaton Asphalt Co.* (1976), 41 Ill. App. 3d 1020; *Dean v. Keith's & Ralph's Tavern, Inc.* (1975), 25 Ill. App. 3d 970; *Boone v. Baker* (1972), 9 Ill. App. 3d 509.

The waiver rule is not absolute. Our Rule 451(c) (58 Ill. 2d R. 451(c)), which requires that instructions in criminal cases be tendered, given and settled as provided in section 67 of the Civil Practice Act (Ill. Rev. Stat. 1977, ch. 110, par. 67), also provides:

"[B]ut substantial defects are not waived by failure to make timely objections thereto if the interests of justice require."

Thus the waiver rule does not apply to *substantial defects* in instructions *if* the *interests of justice require.*

In applying this exception, this court has not broadly interpreted its provisions. In *People v. Joyner* (1972), 50 Ill. 2d 302, an error regarding the failure to instruct on a lesser included offense was not waived because, as noted by the court:

"This was a close case factually and it was

possible for the jury to find the defendants guilty of murder, not guilty by reason of self-defense, or guilty of manslaughter." (50 Ill. 2d 302, 307.) The court felt that by not instructing on manslaughter the option to find the defendants guilty of manslaughter was not open to the jury. The court also noted that the defendants' failure to tender the appropriate instruction was not as important to the fundamental fairness of their trial as the requirement that the jury be properly instructed. In *People v. Cesarz* (1969), 44 Ill. 2d 180, the defendant was convicted of murder and was sentenced to 70 to 90 years in prison. No instruction was given advising the jury that the burden was on the State to establish the defendants guilty beyond a reasonable doubt. The court noted it could refuse to consider this question on the ground that the defendant waived the giving of the instruction by his failure to tender it, but in view of the seriousness of the offense and the severity of the sentence, the court elected to consider the claim. In *People v. Jenkins* (1977), 69 Ill. 2d 61, the defendant was found guilty of attempted murder. The People tendered a mandatory instruction which omitted an essential element of the case, the justifiable use of force, although that had been an issue. The defendant tendered a mandatory instruction which included the element of justifiable use of force. This court held that the giving of two contradictory instructions, each mandating the jury to find the defendant guilty or not guilty based on the required findings stated in each instruction, constituted error that was not waived and which could be, considered under our Rule 451(c). This court stated that where there are "such grave errors in instructions so as to affect that very important consideration, justice, Rule 451(c) provides for a relaxation of [the waiver doctrine]." (69 Ill. 2d 61, 66.) In *People v. Underwood* (1978), 72 Ill. 2d 124, 130, this court noted that the "object of this limited exception to

the waiver rule is to ensure that a defendant is not denied his right to a fair and impartial jury trial."

The United States Supreme Court has also recently expressed a reluctance to read exceptions to the waiver rule broadly, particularly in the context of jury instructions. In *Henderson v. Kibbe* (1977), 431 U.S. 145, 52 L. Ed. 2d 203, 97 S. Ct. 1730, the court held that it was not reversible error when the element of causation was omitted from jury instructions in a trial for second degree murder. Mr. Justice Stevens said: "It is the rare case in which an improper instruction will justify reversal of a criminal conviction when no objection has been made in the trial court." 431 U.S. 145, 154, 52 L. Ed. 2d 203, 212, 97 S. Ct. 1730, 1736.

Section 4.6(c) of the ABA Standards, Trial By Jury (1968), provides in part:

"No party should be permitted to raise on appeal the failure to give an instruction unless he shall have tendered it, and no party should be permitted to raise on appeal the giving of an instruction unless he objected thereto ***. However, if the interests of justice so require, substantial defects or omissions should not be deemed waived by failure to object to or tender an instruction."

The committee commentary to this section states that notwithstanding the existence of the waiver rule the Federal courts, and most State courts, have taken the position that in criminal cases the trial judge has a responsibility to ensure that certain *essential instructions* are given.

"Certain basic instructions, essential to a fair determination of the case by the jury (e.g., burden of proof, elements of offense charged), must be given, and the concept of waiver will not be employed to bar reversal if a defendant has been convicted in the absence of these instructions." ABA Standards, Trial By Jury, Commentary, at 116 (1968).

The commentary concludes by stating that the last

14

sentence in section 4.6(c) is based upon our Rule 451.

Thus, where there is a failure to object to an instruction, waiver is the rule, and the provision of our Rule 451(c) constitutes an exception which, under the prior decisions of this court, is a limited exception (*People v. Underwood* (1978), 72 Ill. 2d 124, 129-30), to be used to correct "grave errors" (*People v. Jenkins* (1977), 69 Ill. 2d 61, 66), or to be applied where the case is close factually and fundamental fairness requires that the jury be properly instructed (*People v. Joyner* (1972), 50 Ill. 2d 302, 307).

In discussing exceptions to the waiver rule as it relates to the failure to raise an issue in the trial court, this court stated in *People v. Burson* (1957), 11 Ill. 2d 360, 370, that the rule "will not operate to deprive an accused of his constitutional rights of due process." The court also stated that it may, as a *matter of grace,* take notice of errors appearing upon the record *which deprived the accused of substantial means of enjoying a fair and impartial trial.* (11 Ill. 2d 360, 370-71.) In *People v. Pickett* (1973), 54 Ill. 2d 280, 283, this court noted that the plain error exception to the waiver rule will also be applied in criminal cases in which the *evidence is closely balanced.*

In Roberts' case the instruction defining murder was erroneous when considered in the context of the crime of attempted murder. The instruction was bad in that it told the jury that a person may commit the crime of murder when he has not only the intent to kill, but also when he has certain mental states other than an intent to kill. However, the inclusion of these other mental states in the nonmandatory definitional instruction does not constitute "grave error" contemplated by the cases cited, which have applied the limited exception to the waiver rule provision of our Rule 451(c). In this case it is not necessary "as a matter of grace" to apply this limited exception to assure the defendant a substantial means of enjoying a fair trial,

and the evidence in this case is not "closely balanced." Also, the giving of this erroneous instruction does not constitute a denial of due process of law. These strict tests, previously applied by this court and which are recognized by the ABA Standards, demonstrate that the exception to the waiver rule is limited and is applicable only to serious errors which severely threaten the fundamental fairness of the defendant's trial. The error in the giving of the instruction in this case does not fall within the purview of the limited exception as heretofore recognized by this court.

In a sense, every error in the giving of an instruction impinges upon the right of a party to a fair trial. For this reason, when the instruction is objected to and the error called to the court's attention, the giving of an erroneous instruction over an objection will warrant the reversal of a conviction and the granting of a new trial. However, in the absence of such an objection the defects are waived unless they are "substantial" and the "interests of justice require" the court to consider them. Nothing in *People v. Harris* (1978), 72 Ill. 2d 16, mandates a different conclusion. Although in *Harris* this court discussed instructional error in the context of Rule 451(c), we granted leave to appeal in that case to resolve the attempted-murder problem resulting from our decisions in *People v. Muir* and *People v. Trinkle,* and not to deal with the question of waiver. Harris, in fact, objected at trial to the instruction but failed to raise the question in his post-trial motion (72 Ill. 2d 16, 20).

Roberts' appeal raises one final point. Both Roberts and the People invite us to decide whether reckless conduct is a lesser included offense in attempted murder. We decline the invitation. We have carefully examined the record in Roberts' trial and find that neither the People nor Roberts presented any evidence that would lead to a finding of reckless conduct. It is the well-established rule

in this State that there must be evidence to support the request for an instruction. (*People v. Cox* (1930), 340 Ill. 111.) No such evidence exists here. In addition to this lack of evidence, we note that the trial judge asked Roberts' counsel several times whether there were any cases on the included-offense point; when none were produced, the judge refused the instruction. No cases on point have been cited to us either. Under the circumstances of this case, we feel that no error occurred.

In conclusion, we hold that these defendants are barred by the procedural-default rule of waiver from raising the issue of instruction error. Neither defendant can meet the requirements of the Rule 451(c) exception. As we emphasized in *People v. Precup* (1978), 73 Ill. 2d 7, 16, in the context of Rule 615 plain error, our exceptions to the waiver rule do not operate in the nature of a general saving clause preserving for review all errors affecting substantial rights whether or not they have been brought to the attention of the trial court. That observation in *Precup* applies with equal validity to claimed error in jury instructions. Finally, in addition to the waiver barrier, Grizzle has not demonstrated a trial error of such magnitude that constitutional standards require the granting of a new trial under the Post-Conviction Hearing Act.

The appellate court opinion states: "Other complaints of error cited by defendant Roberts involved circumstances that are not likely to arise in a subsequent trial for the same offense. We need not discuss them." (56 Ill. App. 3d 667, 674.) The opinion does not state nor have we been informed what these other claims of error are. However, it appears from the quoted language that there may have been issues raised in the appellate court that were not determined.

Therefore, in the case of defendant Grizzle, the judgment of the appellate court is reversed and the judgment of the circuit court of Jersey County is affirmed.

In the case of defendant Roberts, the judgment of the appellate court is reversed and the cause is remanded to that court for consideration of other issues that have been raised but not considered by that court in the cause from which this appeal was taken.

*Appellate court reversed; circuit court of Jersey County affirmed; cause remanded in part, with directions.*

MR. JUSTICE MORAN, concurring in People v. Grizzle and dissenting in People v. Roberts:

The majority, *sua sponte*, relies on the procedural rule of waiver to reverse the appellate court and reinstate defendant Roberts' conviction for attempted murder. This was done despite the well-established rule that an issue not raised in the court of review is deemed waived. Nowhere in its petition for leave to appeal, its brief, or its reply brief does the State contend that Roberts waived any error by his failure to object to the giving of the instructions in question. Neither party considers waiver to be an issue here, and with good reason, for the question of waiver, in the context of such instructions on attempted murder, was argued and disposed of by this court in *People v. Harris* (1978), 72 Ill. 2d 16.

*Harris* was the consolidation of two cases appealed by the State, the defendants being Harris and Shields. Each involved charges of attempted murder and jury instructions similar to those involved in the instant case. At trial, Harris objected to the giving of the questioned jury instructions but the objection was overruled. He failed to raise the same objection in his post-trial motion. Shields, on the other hand, failed to object to the giving of such instructions at both the trial and his post-trial hearing. The briefs in both cases disclosed that in Harris' case, as here, the State did not raise the waiver issue, but did so in Shields' case. In both, this court determined that the

18

instructional errors were so "substantial" that the waiver rule should not bar consideration on the merits. *People v. Harris* (1978), 72 Ill. 2d 16, 28.

The majority attempts to distinguish *Harris* on the ground that "we granted leave to appeal in that case [*Harris*] to resolve the attempted-murder problem resulting from our decisions in *People v. Muir* and *People v. Trinkle,* and not to deal with the question of wavier." (75 Ill. 2d at 15.) This statement is unfounded, since reasons for allowing a petition for leave to appeal are unrecorded. The opinion in *Harris* evidences that we applied the waiver rule because the instructions on the elements of the offense of attempted murder were so substantially defective that, in the interests of justice, defendant was allowed to raise the issue on appeal. To now deny defendant Roberts the same right—to have his case decided on the merits—especially when the State has not urged us to do so, is not only patently unfair to the defendant but casts doubt on the sincerity of our recent efforts to correct the errors which heretofore prevailed in this area of criminal law.

At issue in both *People v. Trinkle* (1977), 68 Ill. 2d 198, and *People v. Harris* (1978), 72 Ill. 2d 16, were the proper instructions to be given the jury when the offense is attempted murder. In *Trinkle,* we held that a conviction cannot stand if the jury was instructed that it could find a defendant guilty of attempted murder "sans specific intent to kill." (*People v. Trinkle* (1977), 68 Ill. 2d 198, 201.) In *Harris,* we upset the convictions of both Harris and Shields, and affirmatively resolved, "An instruction must make it clear that to convict for attempted murder nothing less than a criminal intent to kill must be shown." (*People v. Harris* (1978), 72 Ill. 2d 16, 27.) The instructional defect in the cases of Trinkle, Harris and Shields was precisely the same as the defect in the present case. The prejudicial impact of such improper instructions was acknowledged by the holding in *Trinkle* and *Harris.*

Other than absolute-liability offenses, every criminal offense requires one of four mental states. (Ill. Rev. Stat. 1973, ch. 38, pars. 4—3 through 4—7.) Under sections 9—1(a)(1) and 9—1(a)(2) of the Criminal Code of 1961 (Ill. Rev. Stat. 1973, ch. 38, pars. 9—1(a)(1) and 9—1(a)(2)), the offense of murder requires either of two mental states—intent or knowledge. On the other hand, only one mental state will suffice for the offense of attempt. Ill. Rev. Stat. 1973, ch. 38, par. 8—4(a). Also see Ill. Rev. Stat. 1973, ch. 38, par. 4—3(b), and W. LaFave & A. Scott, Criminal Law sec. 59, at 428-29 (1972).

As noted by the majority, the jury in the case at bar was instructed that, to convict defendant of attempted murder, defendant must have acted with intent to commit the crime of murder. The jury was then given the following instruction defining murder:

> "A person commits the crime of murder who kills an individual if, in performing the acts which cause the death,
>     (1) he intends to kill or do great bodily harm to that individual; or
>     (2) he knows that such acts create a strong probability of death or great bodily harm to that individual."

Under this instruction, the jury could convict the defendant of attempted murder if it found that defendant *intended* to do great bodily harm, *knew* that his acts created a strong probability of death, or *knew* that his acts created a strong probability of great bodily harm. (As hereafter noted, defendant was not charged in the verbiage of (1) of the instruction.) Under *Trinkle* and *Harris,* this instruction was erroneous in that it permitted the jury to convict the defendant upon a finding that he had a mental state other than a specific intent to kill.

An indictment and jury instructions must make it clear that the specific intent to kill is a prerequisite to a conviction for attempted murder. Mr. Justice Ryan's dissent in *Harris* commences by stating, "Considerable

amount of uncertainty seems to prevail in courts and among members of the bar as to what language is permissible or impermissible in charging attempted murder and in instructing the jury on this offense." (72 Ill. 2d at 29.) To rectify the uncertainty, I believe the body of the indictment and the necessary instructions regarding attempted murder should contain the following:

### INDICTMENT

On or about the _____ day of _____, at and within _____ County, Illinois, _____ committed the offense of ATTEMPT MURDER, in violation of section 8—4(a) of the Criminal Code of 1961 (Illinois Revised Statutes 19__, chapter 38, section 8—4(a)) in that [he] [she] did, with the intent to commit the offense of murder of _____[victim]_____, take a substantial step toward the commission of said offense, in that [he] [she] did, without lawful justification, _____, with the intent to kill _____[victim]_____ in violation of section 9—1(a)(1) of the Criminal Code of 1961 (Illinois Revised Statutes 19__, chapter 38, section 9—1(a)(1)).

### JURY INSTRUCTIONS FOR ATTEMPTED MURDER

A person who kills an individual without lawful justification commits the crime of murder if, in performing the acts which cause the death, he intends to kill that individual.

_____

A person commits the crime of attempted murder if, with intent to commit the crime of murder, he does any act which constitutes a substantial step toward the commission of the crime of murder.

The crime attempted need not have been committed.

_____

To sustain the charge of attempted murder, the State must prove the following propositions:

First: That the defendant performed an act which constituted a substantial step toward the commission of the crime of murder; and

Second: That the defendant did so with the intent to

kill _____[victim]_____.

    If you find from your consideration of all the evidence that each of these propositions has been proved beyond a reasonable doubt, then you should find the defendant guilty.

    If, on the other hand, you find from your consideration of all the evidence that any of these propositions has not been proved beyond a reasonable doubt, then you should find the defendant not guilty.

According to the majority, we need not "as a matter of grace" consider the instructional defect, *sub judice*, to assure the defendant a fair trial. (75 Ill. 2d at 14.) The majority bases this assertion on its conclusion that "the evidence in this case is not 'closely balanced.' " (75 Ill. 2d at 14-15.) I am convinced that, in reaching this conclusion, the majority considered whether the defendant committed the acts alleged, but failed to consider the intent which was the subject of the instructional error. The inquiry should have been directed to the defendant's mental state: Did defendant fire a shot into the adjacent truck *with specific intent to kill the driver*? The facts pertinent to this question certainly leave considerable doubt as to whether defendant Roberts had the specific intent to kill. The action taken by the grand jury supports this statement. The indictment presented to the grand jury charged Roberts with two counts of attempted murder. Count I stated:

    "*** the defendant, with the intent to commit the offense of Murder in violation of Section 9—1(a)(1) of the Criminal Code of 1961, did perform a substantial step toward the commission of that offense in that he did, with the intent to kill or do great bodily harm to Bernie L. Larson, aimed [*sic*] a gun and shoot said gun at Bernie L. Larson ***."

Count II stated,

    "*** the defendant, with the intent to commit the offense of Murder in violation of Section 9—1(a)(2) of the Criminal Code of 1961, did perform a substantial step

toward the commission of that offense in that he aimed and fired a gun at the passenger compartment of a truck occupied and driven by Bernie L. Larson, knowing that such acts created a strong probability of death or great bodily harm to Bernie L. Larson ***."

Count I charged defendant with the specific intent to kill or do great bodily harm. On this count, the grand jury returned a *no bill*. Count II charged the defendant with knowledge that his acts created a strong probability of death or great bodily harm, and on this count a true bill was returned under which the defendant was subsequently convicted. Therefore, it can only be concluded that the grand jury specifically found a lack of probable cause that Roberts had acted with intent to kill.

There is no doubt that the error in this case, identical to the error in *Harris,* was "substantial"—the determination also reached in *Harris.* This, coupled with the grand jury's finding on count I, leads me to but one conclusion: the interest of justice requires that defendant Roberts' conviction be reversed and the cause remanded for a new trial. I would, therefore, affirm that portion of the appellate court judgment which reversed the conviction of Roberts.