THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.*
MARCUS GREGORY *et al.*, Defendants-Appellants.

Second District   No. 77-377

Opinion filed June 22, 1979.

George W. Pease, Public Defender, of Waukegan, Mary Robinson and Mark J. Heyrman, both of State Appellate Defender's Office, of Elgin, and Claudia Aho Hoogasian, law student, for appellants.

Dennis P. Ryan, State's Attorney, of Waukegan (Phyllis J. Perko and William L. Browers, both of State's Attorneys Appellate Service Commission, of counsel), for the People.

Mr. JUSTICE SEIDENFELD delivered the opinion of the court:

Following a joint jury trial both defendants were convicted of armed robbery and attempt murder. Arthur Vaughn was sentenced to concurrent terms of imprisonment in the penitentiary of not less than 20 nor more than 35 years. Marcus Gregory was sentenced to concurrent terms of not less than 5 years nor more than 15 years. Each defendant appeals and the cases have been consolidated. Each defendant contends that he was denied effective assistance of counsel because he represented codefendants although an alleged conflict existed. Each also argues that the information and instructions with regard to attempt murder erroneously permitted the jury to find the defendants guilty of that offense without a finding of specific intent to kill.

The armed robbery occurred on August 12, 1976, at Midge's Tavern in North Chicago. There was evidence that at approximately 11 p.m. two young men came into the bar and went towards the washrooms. A few minutes later these men left but as they were leaving they were joined by two other men, with all four then entering the bar. One of the men, later identified as Gerald Downey, carried a rifle or shotgun, while the other three were not armed. Downey announced a holdup. A man identified as the defendant Gregory jumped over the bar to retrieve money from the cash register. He noticed that the proprietor had a gun and yelled a warning to Downey. The owner and Downey both exchanged shots with Downey being hit. The defendant Gregory ran out the door. Downey, using the rifle as a crutch, also hobbled outside. A third man identified as the defendant Vaughn ran into the women's washroom. The owner followed but found that the washroom was empty and that a screen which had been in place previously was missing. He discovered a black felt hat in the washroom which, he said, Vaughn had been wearing. The

owner ran outside and while looking for the screen discovered a wallet containing a driver's license in the name of Arthur Vaughn.

There was testimony that two cars had been seen going through the alley behind the tavern shortly after 11 p.m., one a yellow Buick with a black top, another a light tan or gold Dodge Charger. A witness testified that he observed a man jump out of the washroom window and run into the alley, a few seconds later saw another man also running through the alley. He then saw a third man stagger through the alley and fall, but with the aid of a rifle get up and proceed down the alley. Shortly after this the witness saw the Buick going north through the alley and affirmed that he heard voices saying, "Come on, let's get in. We have got to get out of here."

The radio report of the armed robbery went out at approximately 11:15 p.m. with the information that the men had fled the scene in a light colored Dodge. The report was received by the Zion police. At approximately 11:30 members of the Zion police department saw a Buick traveling at a high rate of speed in what they considered a reckless manner. The man who was identified as the defendant Gregory was the driver. Gregory told the officer that he had to get to a hospital, that he had a friend that had been shot, and volunteered the information that the man had been shot in a bar. This alerted the officers to the connection with the Midge's Tavern robbery. The officers identified the defendant Vaughn as a passenger in the stopped vehicle and discovered Downey wounded and bleeding in the back seat. One of the officers testified that Vaughn did not have a wallet at the time of the arrest.

A lineup was held in which one of the persons in the bar identified Vaughn but he also identified another man rather than defendant Gregory. Two other patrons of the bar were both able to identify Gregory and one was not sure about Vaughn. Of the witnesses who saw the cars in the alley, one was unable to identify anyone, another identified Vaughn but also identified another in the lineup rather than defendant Gregory. Other witnesses in the bar identified both the defendants Vaughn and Gregory, while others positively identified Vaughn but were not sure of Gregory. The owner of the bar made a positive identification in court of both defendants as did the owner's wife. One of the patrons who had not picked Gregory out of the lineup positively identified both defendants in court.

At the close of the State's case the defense attorney moved for a directed verdict on the armed robbery charge with regard to defendant Gregory because of the conflicting identification testimony, but conceded that there was sufficient evidence of the identification of Vaughn to go to the jury. The motion was denied and the defense attorney moved for a short continuance. At the end of the recess he advised the court in

chambers that although he had started with two clients who had basically the same position, both maintaining that they were not present at the scene, he now found a conflict impliedly because the wallet placed Vaughn at the scene and cast doubt on the alibi of both men. He explained that he had never intended to put Vaughn on the stand because of a prior felony record; he had intended to put Gregory on the stand but said, now "one man isn't sure that he was with the other guy."

Defense counsel's suggestion that a public defender represent one of the defendants during the balance of the trial was rejected by the court, but this case was continued to the next morning to afford defense counsel an opportunity to work out the problem. No further request was made when the trial re-commenced but counsel sought, unsuccessfully, to bar the introduction of the wallet.

The defendant Gregory then testified. Substantially, he stated that he had gone to visit Vaughn at Vaughn's sister's house; that as they were leaving they saw Downey who had blood all over his shirt and they agreed to take him to a hospital; they intended to take him to Victory Memorial Hospital nearby but that because of construction they decided to take him to the hospital in Zion. Gregory denied knowing anything about the incident in Midge's Tavern that evening and stated that because Vaughn's foot was injured he drove and Vaughn sat in the passenger's seat although it was Vaughn's car. He also said that since he only had a driver's permit he had asked Vaughn if he had his license with him and that Vaughn pulled out his wallet and set it on the arm rest.

On the issue of the effective assistance of counsel defendants argue that although the exact nature of the conflict between Vaughn and Gregory is not clear because Vaughn did not testify, the fact that there was a conflict was recognized both by defense counsel and by the court as "serious." The defendants note that in the State's case the officer who conducted the lineup testified that while most of the witnesses identified Vaughn a number of the witnesses were unable to identify Gregory; that this although hearsay was not objected to by counsel and particularly prejudiced Vaughn's defense. Vaughn also complains that counsel's arguments to the court were directed principally in Gregory's behalf both in connection with the trial and in the sentencing hearing which followed. The State responds that no conflict, in fact, developed in the course of trial since Gregory testified in support of the alibi defense as to both defendants.

■■ It is undisputed that the sixth and fourteenth amendments to the United States Constitution guarantee the right of effective assistance of counsel which is denied if defendants whose interests are in conflict are required to be represented by the same attorney. (*People v. Vriner*, 74 Ill. 2d 329, 337 (1978).) Moreover, if a conflict in fact exists the requirement

of joint representation over timely objection requires reversal without a showing of prejudice. (*Holloway v. Arkansas*, 435 U.S. 475, 488, 55 L. Ed. 2d 426, 437, 98 S. Ct. 1173, 1181 (1978).) See also *People v. Vriner*, at 341.

Preliminarily we have some question whether the issue has been timely raised within the meaning of *Holloway* (435 U.S. 475, 488, 55 L. Ed. 2d 426, 437, 98 S. Ct. 1173, 1181) in view of the record. As we have noted, Vaughn was initially represented by a public defender at arraignment. Defense counsel, who is now under attack, initially represented only Gregory and on his behalf made an oral motion for severance of trial which he did not pursue; and thereafter he was retained by both defendants. But in any event we do not find from the record that an actual conflict exists which would deny either defendant the effective assistance of counsel.

■■ Gregory contends that had separate counsel been appointed the inability of several witnesses at the lineup to identify him while they were able to identify his co-defendant Vaughn would have been more forcefully brought out before the jury. As noted in *People v. Vriner*, 74 Ill. 2d 329, 342 (1978), "a positive basis must be found for concluding that an actual conflict of interests existed." The fact that a defendant "through hindsight, conceived notions that the representation adversely affected" his interests is insufficient. (*People v. Vriner*, at 342.) So, here, it is equally clear that the defendant Gregory was not able to articulate how he was prejudiced by the joint defense. The jury heard the evidence of the two witnesses who did not identify Gregory at the lineup but on cross-examination it was brought out that the lineup identifications were not as complete for Gregory as for Vaughn; but there was no showing of antagonistic defenses as both defendants used the identical alibi and Gregory testified that he was with Vaughn when the alleged crime occurred. There was thus a total inability of Gregory to show how his defense would have been different had he obtained separate counsel.

In Vaughn's case he sought to show that the jointly retained counsel gave up his defense in an attempt to save Gregory. However, it is difficult to see what counsel with undivided loyalty to Vaughn could have done that joint counsel did not do, in view of the unalterable fact that the evidence against Vaughn appeared stronger than that against Gregory. Yet Vaughn, too, had the same alibi defense which was in fact supported by the testimony of Gregory at trial.

The cases cited by the defendants involve circumstances where the conflict is apparent and articulated and the principal cases cited have been distinguished on that ground in *Vriner*. (*People v. Vriner*, 74 Ill. 2d 329, 340-41 (1978).) Vaughn has also argued that defense counsel advised the court that he planned to plea bargain but that this decision was changed because of the joint representation. However, the only

suggestion of this which appears in the record is a comment by counsel that he was prepared to "plead" both men but they had both maintained "every inch of the way that they weren't guilty." We fail to see how this indicates prejudice. Likewise the fact that counsel made a more convincing argument for Gregory at the sentencing hearing is insufficient to show a conflict of interest in view of the disparate records of the defendants.

We therefore hold with the trial court that the defendants failed to show a conflict of interests upon which to base their claims that they were denied the effective assistance of counsel. Therefore the conviction of each defendant under the charge of armed robbery must be affirmed.

The defendants also argue that the attempt murder convictions must be reversed because the State failed to prove that the defendants or either of them were shown to have the requisite intent to kill required to sustain a conviction for attempt murder.

The defendants were charged by an information which included the statements that the defendants

"* * * committed the offense of ATTEMPT MURDER when with the intent to commit the specific offense of Murder, in violation of Section 9—1, Chapter 38, of the Illinois Revised Statutes, 1975, they did an act which constitutes a substantial step toward the commission of the offense of murder when they fired a rifle at the person of William Jakaitis knowing that such act created a strong probability of death or great bodily harm to said [victim] * * * ."

The instruction defining "attempt" given to the jury without objection contained the following:

"First: That the defendant performed an act which constituted a substantial step toward the commission of the crime of murder; and

Second: That the defendant did so with intent to commit the crime of murder."

The defendants argue that the State failed to prove the requisite specific intent to kill necessary to convict for attempt murder and, in effect, convicted defendants of attempt murder solely on the ground that they participated in a forcible felony, directly contrary to *People v. Viser*, 62 Ill. 2d 568, 582 (1975). In further support of this view they point to the prosecutor's closing argument in which he said "if something goes wrong, all partners are responsible" and "if the gun is fired in the commission of a felony, armed robbery, all are responsible for the acts of the gunman; Vaughn and Gregory are responsible for the acts of the gunman, the deceased." They also argue that since no definition of murder was given, the jury could only have used the definition from the information which

permitted proof of attempt murder based on the intent to inflict "great bodily harm" rather than the specific intent to kill which is the proper mental state upon which to base a conviction of attempt murder pursuant to *People v. Trinkle*, 68 Ill. 2d 198, 204 (1977), and *People v. Harris*, 72 Ill. 2d 16, 35 (1978).

The State concedes that *Viser* would require reversal if the conviction had been based merely on participation in the forcible felony, armed robbery; but responds that it did not relieve itself of the burden of proving that Downey intended to kill the victim. It concedes that it was required to prove that Downey harbored the intent to commit the crime attempted as required by *Viser*; but argues that it did so and that it also proved that Vaughn and Gregory were guilty by accountability for Downey's acts which were performed under circumstances which showed the necessary intent to kill the victim. While conceding that the defendants were not properly instructed as to the specific intent required to be proved to sustain the attempt murder conviction pursuant to *Trinkle* and *Harris*, the State urges that this error has been waived because defendants failed to make the objection either to the charge or the instruction in the trial court, citing *People v. Roberts*, 75 Ill. 2d 1, 15 (1979).

■■ Based upon the now controlling authorities we agree with the position of the State. The evidence with the reasonable inferences which may be drawn therefrom furnishes proof from which a jury could find beyond a reasonable doubt that Downey, when he shot a rifle or shotgun at close range at the upper part of the victim's body (the lower part being behind the bar), intended to kill the victim. Downey was presumed to intend the natural and probable consequences flowing from his deliberate act of shooting a loaded gun at the victim from relatively close range and in the absence of any qualifying facts the destruction of the victim's life can be said to have been intended. (*Weaver v. People*, 132 Ill. 536, 540-41 (1890).) The record here discloses no qualifying facts, in our view, which could cast doubt on the inference.

We cannot conclude that the defendants Vaughn and Gregory were proved to have had the specific intent to kill the victim; but they were properly convicted of attempt murder of which Downey could have been guilty had he survived on principles of accountability.

Section 5—2(c) of the Criminal Code of 1961 (Ill. Rev. Stat. 1975, ch. 38, par. 5—2(c)) provides for accountability where a person "[e]ither before or during the commission of an offense, and with the intent to promote or facilitate such commission, * * * solicits, aids, abets, agrees or attempts to aid, such other person in the planning or commission of the offense."

■■ ■ "An offense" as the term is used in the preceding quotation has

been defined to mean "any offense"; thus the State was not required to prove that Vaughn and Gregory also had the specific intent to kill the victim. The clear proof that Vaughn and Gregory aided and abetted Downey in the planning and commission of the offense of armed robbery, a crime in which the kind of violence engaged in by Downey appears to be a natural consequence, and did so with the intent to facilitate the commission of the offense of armed robbery, is sufficient to prove the defendants' guilt of the attempt murder which occurred in furtherance of the venture based upon principles of accountability. *People v. Kessler*, 57 Ill. 2d 493, 497-99 (1974). See also *People v. Joupperi*, 31 Ill. App. 3d 558, 561 (1975).

We therefore affirm the judgments against each of the defendants.

Affirmed.

GUILD, P. J., and NASH, J., concur.