THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.*
ELRIGE ANDERSON, a/k/a Eldridge Anderson, Defendant-Appellant.

First District (5th Division)   No. 81—405

Opinion filed August 6, 1982.—Rehearing denied September 15, 1982.

James J. Doherty, Public Defender, of Chicago (Marc Fogelberg, Assistant Public Defender, of counsel), for appellant.

Richard M. Daley, State's Attorney, of Chicago (Michael E. Shabat and David A. Stoioff, Assistant State's Attorneys, of counsel), for the People.

PRESIDING JUSTICE SULLIVAN delivered the opinion of the court:

Defendant was convicted in a jury trial of attempted murder, armed robbery, and aggravated battery and sentenced concurrently to

25 years for attempted murder and armed robbery and to 5 years for aggravated battery. On appeal, he contends that (1) he was not proved guilty of attempted murder beyond a reasonable doubt; (2) the trial court erred (a) by improperly instructing the jury on attempted murder and (b) by admitting evidence of other crimes; (3) evidence of another robbery allegedly committed by defendant was precluded from admission by the Juvenile Court Act (Ill. Rev. Stat. 1977, ch. 37, par. 702—9(1)); (4) he was 16 at the time of the offenses for which he was tried; and (5) his convictions for aggravated battery and attempted murder were based on the same act.

Complainant testified that she returned home from work at 1 a.m. on November 22, 1978; that as she was parking her car in front of her house at 5243 West Kammerling, in Chicago, she observed a man, whom she identified in court as defendant, walking down the sidewalk adjacent to her house; that after she parked the car, she walked to the sidewalk and asked defendant, who was then standing on the step of her house, whether she could help him; that he asked whether Judy was home—to which she replied that he had the wrong house; that defendant then walked toward her and, when he was 2 to 3 feet away, she saw a small dark gun in his hand pointed at her abdominal area with his finger on the trigger; that he told her if she said anything he would kill her, and he ordered her to give him her purse; that she told him, "You can have the purse, there's nothing in it, but you can have it"; that he then placed his right arm around her neck and, holding the gun in his left hand, pressed it against her face and started walking her away from the house toward the alley; that she repeatedly asked him not to hurt her; that when they had walked four or five steps, she "started pulling away" from him, and he shot her in the lower left jaw; and that he then released her and walked away with her purse. She identified in court a gun, a dark navy pea jacket, and a blue knit ski hat as similar to those defendant had on the night in question.

On cross-examination, plaintiff testified that "as soon as I tried to pull away I was shot" and then, when asked whether her assailant put more force around her neck with his arm when she started to pull away, she answered, "I don't remember because when I started to pull away it seems to me that simultaneously I was shot."

Over defense objection, the State also presented testimony concerning two other armed robberies of women—one before and one after the occurrence in question—which were allegedly committed by defendant.[1] Officer Richard Banaszkiewicz testified that at the time

---

[1] In the second of which the jury was not informed that the victim was also raped.

he arrested defendant for one of those armed robberies, he recovered a navy pea jacket, a blue knit ski hat, a nylon stocking mask, and a .22-caliber pistol.

The sole witness for the defense was defendant's mother, who testified that her son was born at 8:45 a.m. on November 22, 1961.

OPINION

We consider first the contention of defendant that he was not proved guilty beyond a reasonable doubt.

■ To sustain a conviction for attempted murder, it must be shown that the accused acted with the specific intent to kill (*People v. Roberts* (1979), 75 Ill. 2d 1, 387 N.E.2d 331), but intent is a state of mind which, if not admitted, can be shown by surrounding circumstances, and the intent to take a life may be inferred from the character of the assault, the use of a deadly weapon, and other circumstances (*People v. Koshiol* (1970), 45 Ill. 2d 573, 262 N.E.2d 446, *cert. denied* (1971), 401 U.S. 978, 28 L. Ed. 2d 329, 91 S. Ct. 1209).

In the case before us, complainant testified that defendant pointed a gun to her stomach and said he would kill her if she said anything; that after he took her purse, he grabbed her and began walking her to a nearby alley, holding her around the neck with his right arm and pressing the gun held in his left hand to her jaw; that after they had walked four or five steps she started to pull away, and he shot her in the face; and that when she started screaming, he walked away with her purse.

On cross-examination, when she was asked whether defendant put more force around her neck with his right arm when she started to pull away, she answered, "I don't remember, because when I started to pull away it seems to me that simultaneously I was shot." Based solely upon complainant's use of the word "simultaneously," defendant argues "Mrs. Hall [complainant] was shot at the instant she tried to jerk away. This indicates that the shooting was accidental, a reflex action * * *, not an intentional act."

This argument assumes that complainant, in attempting to free herself, used force sufficient to cause defendant to accidentally discharge the gun. There is, however, nothing in the record to support such an assumption. No questions were asked of complainant to clarify her use of the word "simultaneously," and no inquiry was made to determine either the nature of any effort she made to free herself or whether she had in fact used any force to do so at the time of the shooting. She stated only that when she started to pull away from

defendant, it seemed to her that simultaneously she was shot.

■ Furthermore, the record does not otherwise indicate that the shooting was accidental. Complainant gave uncontradicted testimony that with the gun pointed at her stomach and his finger on the trigger, defendant threatened to kill her; that he was pulling her toward the alley with the gun pressed to her face when it was discharged; and that after the shooting he neither said nor did anything to indicate an accidental shooting. In addition, from the testimony of defendant's mother that she always kept the gun unloaded, it is reasonable to conclude that defendant loaded the gun prior to the shooting. Moreover, the apparent difficulty in the trigger pull of the gun further negates the assumption of an accidental shooting. Defense counsel, referring to the gun in closing argument, stated "[t]his trigger, it is a little difficult to pull, not so difficult to pull that it can't be jerked, but difficult to pull," and he then suggested to the jurors that they try to pull the trigger in the jury room "to see how difficult it is to pull with the hand that you don't normally use." Conceivably, the jurors followed this suggestion and perhaps found that the trigger was so difficult to pull that it could not be discharged accidentally, as contended by defendant. Furthermore, it has been stated that "the very fact of firing a gun at a person supports the conclusion that the person doing so acted with the intent to kill." (*People v. Seats* (1979), 68 Ill. App. 3d 889, 895, 386 N.E.2d 879, 884; see also *People v. Bingham* (1979), 75 Ill. App. 3d 418, 394 N.E.2d 430; *People v. Thorns* (1978), 62 Ill. App. 3d 1028, 379 N.E.2d 641.) In light of the above, we are of the opinion that intent to kill was established and that defendant's guilt was proved beyond a reasonable doubt.

We turn then to the contention of defendant that the court improperly instructed the jury that he could be convicted of attempted murder if he acted with intent to cause great bodily harm. It is clear that to convict for attempted murder an intent to kill must be shown, and it is error to instruct that a defendant could be found guilty of attempted murder if he acted with intent to do great bodily harm. *People v. Harris* (1978), 72 Ill. 2d 16, 377 N.E.2d 28.

The giving of the specific instruction complained of, Illinois Pattern Jury Instruction, Criminal, No. 7.01 (1968) (hereinafter cited as IPI Criminal), stating that "[a] person commits the crime of murder who kills an individual if, in performing the acts which cause the death, he intends to kill or do great bodily harm to that individual," was found to be error in *Harris*. We note, however, that no objection was made to the giving of IPI Criminal No. 7.01 and no question was raised concerning it in defendant's post-trial motion. Under such cir-

cumstances, it has been held that the error was waived (*People v. Underwood* (1978), 72 Ill. 2d 124, 378 N.E.2d 513; *People v. Pickett* (1973), 54 Ill. 2d 280, 296 N.E.2d 856), and the State posits that the instructional error was not so plain, substantial, or grave as to warrant our taking notice of it (58 Ill. 2d Rules 451(c), 615(a)). In *People v. Roberts* (1979), 75 Ill. 2d 1, 387 N.E.2d 331, the court applied the waiver rule strictly and found that instructional error identical to that in the instant case did not present a substantial defect which required consideration in the interests of justice. As stated in *Roberts*:

> "[T]he instruction defining murder was erroneous when considered in the context of the crime of attempted murder. The instruction was bad in that it told the jury that a person may commit the crime of murder when he has not only the intent to kill, but also when he has certain mental states other than an intent to kill. However, the inclusion of these other mental states in the nonmandatory definitional instruction does not constitute 'grave error' contemplated by the cases cited, which have applied the limited exception to the waiver rule provision of our Rule 451(c). In this case it is not necessary 'as a matter of grace' to apply this limited exception to assure the defendant a substantial means of enjoying a fair trial, and the evidence in this case is not 'closely balanced'." (75 Ill. 2d 1, 14-15, 387 N.E.2d 331, 337.)

See also *People v. Jones* (1979), 81 Ill. 2d 1, 405 N.E.2d 343, where the same instructional error was held to be harmless because the evidence as to intent to kill was closely balanced.

Here, it is uncontradicted that defendant was pulling complainant toward an alley with one arm around her neck and with the other hand holding a gun to her face, when the gun was discharged by him. As we have explained above, the defense of an accidental shooting is not supported by the record and, in the absence thereof, it is clear that the evidence was not closely balanced. Accordingly, we find the instructional error to be harmless.

We next consider defendant's contention that the trial court erred in admitting the testimony of two women who stated that defendant robbed them in separate incidents apart from the present case. We find no merit to this contention.

The record indicates that two women testified that they were victims of robberies by defendant. The first said that she was robbed by defendant at about 10:30 p.m. on November 9, 1978, as she was returning from school to her home at 1305 North Lockwood; that after she exited her car in front of her house and entered the vestibule,

defendant forced his way inside, produced a revolver which he pointed at her stomach, and told her "Don't scream. Give me your purse"; that she screamed anyway and backed up until she was against a wall; that she next remembered lying on the floor with defendant standing over her still pointing the gun at her; that she then gave him her purse, and he left; and that he was wearing a black knee-length topcoat but was not wearing a cap.

The second victim testified that she was robbed by defendant in the alley behind her home at 5035 West Crystal on November 28, 1978, at about 1 a.m. as she was parking her car in her garage directly behind her house because she could not find a place in front; that as she opened the door, she saw defendant standing about three feet from her pointing a gun at her; that he was wearing a blue knit hat and navy pea coat and had a nylon stocking over his face; that when he raised the stocking to wipe his face, she recognized him as someone she had seen in the neighborhood; and that he ordered her into the back seat of her car, where he took her purse.[2]

■ In general, evidence of other crimes for which the accused is not on trial is inadmissible (*People v. Lehman* (1955), 5 Ill. 2d 337, 125 N.E.2d 506), particularly to show a propensity on the part of the accused to commit criminal acts (*People v. McDonald* (1975), 62 Ill. 2d 448, 343 N.E.2d 489). However, such evidence is admissible to show other facts in issue, such as motive, intent, absence of mistake or accident, or *modus operandi,* for then it has independent relevance. (*People v. Armstrong* (1968), 41 Ill. 2d 390, 243 N.E.2d 825, *cert. denied sub nom. Sumlin v. Illinois* (1969), 394 U.S. 992, 22 L. Ed. 2d 768, 89 S. Ct. 1483; *People v. Lehman* (1955), 5 Ill. 2d 337, 125 N.E.2d 506.) Moreover, in order for evidence of other crimes to be admissible, its probative value must outweigh its prejudicial impact. *People v. Romero* (1977), 66 Ill. 2d 325, 362 N.E.2d 288.

■ ■ With respect to the *modus operandi* principle, it was stated in *People v. Butler* (1978), 63 Ill. App. 3d 132, 140-41, 379 N.E.2d 703, 709:

"Evidence of other crimes is admissible to prove *modus operandi* if there is some clear connection between the prior offense and the crime charged which creates a logical inference that if defendant was guilty of one he may be guilty of the other. This inference of identity does not arise from the mere

---

[2]The record further indicates that the witness was raped, but the jury was not informed of that offense.

fact that the charged and prior offenses share certain common features or marks of similarity, for it may be that these similarities are shared not only by the charged crime and defendant's prior offense but also by numerous distinct crimes committed by persons other than the defendant. [Citation.] Rather, the inference is created when both offenses share peculiar and distinctive common features [citations], so as to earmark both crimes as the handiwork of the accused [citations]."

Furthermore, it is unnecessary that the offenses be identical; rather, it is sufficient that when the significant common features of the offenses are considered together, a distinctive combination will become evident. (*People v. Pavic* (1982), 104 Ill. App. 3d 436, 432 N.E.2d 1074.) Finally, the decision to admit such evidence rests with the sound discretion of the trial court, and its determination will not be disturbed on review absent abuse of discretion. *People v. Martin* (1979), 80 Ill. App. 3d 281, 399 N.E.2d 265.

Here, the record reveals sufficient similarities to warrant the admission of the testimony of two prior armed robbery victims. In all three attacks the assailant used a small, dark gun which he held in his left hand. The women were attacked as they came home alone late at night, after leaving their cars. Two victims were accosted after they parked in front of their homes, and the third after she failed to find a parking space in front and parked in her garage. In each instance, the assailant pointed his gun at the victim's stomach or chest and demanded her purse or money. In all three attacks, the purses of the women were taken. Finally, each attack took place within a 3-week period and in places of close geographical relationship—within an area 1100 to 1400 north and 5200 to 5300 west in the City of Chicago. In addition, after the attacks the victims gave the police similar descriptions of the assailant.

Although the attacker of the second victim attempted to hide his identity, that fact is insignificant in our view, since she recognized him as someone she knew in the neighborhood, and he may also have known that she might be able to recognize him. We also do not believe that the alleged rape of the third victim or the shooting of complainant here diminished the strong pattern of similarities among the armed robberies as recounted by each victim, nor was the alleged rape of one prejudicial to defendant since the jury was not informed of it. The potential prejudice was further alleviated by the jury instruction given here that evidence of other crimes should be considered only for the limited purpose of showing identification and design. (See *People v. Kirkwood* (1980), 82 Ill. App. 3d 252, 402 N.E.2d 677.)

In light of the foregoing, we find no abuse of discretion.

Defendant next contends that the testimony of Doris Martinez was precluded from admission by the provisions of the Juvenile Court Act (the Act). He maintains because he was only 16 years old at the time of the Doris Martinez robbery, he was subject to the jurisdiction of the juvenile court, and that he might successfully challenge the jurisdiction of the adult court as to that incident. Defendant bases this contention on section 2—9(1) of the Act (Ill. Rev. Stat. 1977, ch. 37, par. 702—9(1)), which provides in relevant part:

"No adjudication, disposition or evidence given in proceedings under this Act is admissible as evidence against the minor for any purpose whatever in any civil, criminal or other cause or proceeding except in subsequent proceedings under this Act concerning the same minor."

■ There is nothing in the record here to indicate that there was an adjudication or disposition or that any evidence was given in any proceeding under this Act concerning the Martinez robbery. Accordingly, section 2—9(1) does not preclude the admission in the present case of Martinez' testimony—particularly since the purpose of such evidence was to show identity and design as to defendant—and thus it met the requirements of the rule prohibiting "other crimes" evidence, as discussed above. Considering this point and the fact that defendant was charged by information with the armed robbery of Martinez, we view his contention to be speculative and without merit.

Defendant further contends that he was under 17 years of age at the time of the alleged offense and thus could not have been prosecuted as an adult offender under the criminal laws of this State. (See Ill. Rev. Stat. 1977, ch. 37, par. 702—7(1).) In support of his position, defendant refers to the testimony of his mother that he was born at 8:45 a.m., November 22, 1961, and the fact that the alleged offense occurred at 1 a.m., November 22, 1978. Thus, defendant maintains that he was about 7 hours short of being 17 years old at the time of the occurrence in question. We reject this contention.

■ It is a familiar principle that in computing the age of an individual, the law does not recognize fractions of a day. In *State v. Brown* (Mo. 1969), 443 S.W.2d 805, the defendant contended that he did not become an adult until the anniversary of the precise hour and moment of his birth. Rejecting that contention, the court stated:

"[A]s a general rule, the law does not consider fractions of a day [citation]. While exceptions to this rule have been made by various courts, most relate to situations where the two acts occur on the same day, such as priorities of liens or deeds filed on

the same day. As to computation of a person's age, the same contention as defendant here makes was made in the early case (1633) of *Herbert v. Turball* 1 Keble 590, 83 Eng. Reprint 1129, 1 Sid 162, 82 Eng. Reprint 1033, and the court stated: '*** and whatever hour he was born is not material, there being no fraction of days.' "

(Also see *Erwin v. Benton* (1905), 120 Ky. 536, 87 S.W. 291; *Commonwealth v. Howe* (1908), 35 Pa. Super. 554.) Applying the rule of *Brown* to the present case, it is apparent that defendant had attained the age of 17 at the time of the offense in question.

■■■ Finally, we note the agreement of the State that the same physical act of shooting was the basis for the convictions of both aggravated battery and attempted murder, the former being a lesser-included offense of the latter, and thus the conviction of aggravated battery and the sentence thereon will be vacated.

For the reasons stated, the judgments as to attempted murder and armed robbery are affirmed, but the judgment as to aggravated battery is vacated.

Affirmed in part; vacated in part.

LORENZ and MEJDA, JJ., concur.