THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. ROBERT BAILEY, JR., Defendant-Appellant.

First District (5th Division) No. 84—0026

Opinion filed March 7, 1986.

James J. Doherty, Public Defender, of Chicago (John Thomas Moran and Terry Lotsoff, Assistant Public Defenders, of counsel), for appellant.

Richard M. Daley, State's Attorney, of Chicago (Joan S. Cherry, Karyn Stratton, and Thomas P. Riordan, Assistant State's Attorneys, of counsel), for the People.

PRESIDING JUSTICE SULLIVAN delivered the opinion of the court:

This appeal is from the dismissal of defendant's amended post-conviction petition without an evidentiary hearing. He contends that his constitutional rights were violated or denied where: (1) the trial court gave erroneous instructions on attempted murder and self-defense and improperly refused a defense instruction on provocation; (2) the prosecution (a) abused the grand jury process to coerce a key witness, Ursula Rumas, to change her testimony; (b) coerced another defense witness, Pamela Kubes, into disobeying her subpoena and refusing to testify; (c) used the perjured testimony of Ursula Rumas; and (d) failed to comply with the disclosure requirements of Supreme Court Rule 412; (3) there was a *bona fide* doubt regarding his fitness to be sentenced; (4) the prosecution improperly minimized the burden of proof and grossly misstated the evidence during closing argument, and improperly implied, during redirect examination of Ursula Rumas, that a connection existed between her drug supplier and defendants; (5) defendant was denied effective assistance of trial counsel by his attorney's failure to (a) make an offer of proof regarding the testimony of two material defense witnesses; (b) obtain and introduce certain physical evidence; and (c) object to the prosecution's incomplete instruction on the defense of another; (6) defendant was denied effective assistance of appellate counsel by the failure to raise certain instruction issues; and (7) the dismissal of the amended post-conviction petition without an evidentiary hearing constituted an abuse of discre-

tion.

The facts in this case were set forth at length in the consolidated direct appeal (*People v. Belvedere* (1979), 72 Ill. App. 3d 998, 390 N.E.2d 1239), and, although we will repeat them only when necessary to discuss the issues raised here, we initially note that the charges against defendant arose from a confrontation in the Hasty Grill parking lot between defendant, codefendant Belvedere, and four other individuals. Defendants were also accompanied by Cynthia Saccomanno and Ursula Rumas. After a joint jury trial, defendant was convicted of murder, attempted murder and aggravated battery. His convictions and sentences as well as those of Belvedere were affirmed on direct appeal to this court, and their petition for leave to appeal to the Illinois Supreme Court was denied. Defendant then filed a *pro se* post-conviction petition and subsequently obtained counsel who amended that original petition. The trial court, without an evidentiary hearing, granted the State's motion to dismiss the amended petition and this appeal followed.

OPINION

■ Defendant first contends that his constitutional right to present his theory of the case was abridged when the trial court gave two erroneous instructions and refused a third tendered by defendant. The Illinois Supreme Court, however, has held that alleged errors in jury instructions do not rise to the level of a substantial violation of a constitutional right for purposes of the Post-Conviction Hearing Act and thus do not present questions which would justify relief under that Act. (*People v. Roberts* (1979), 75 Ill. 2d 1, 387 N.E.2d 331.) In addition, it is well established that an affirmance on direct appeal is *res judicata* as to all issues that were raised or that could have been raised on the direct appeal (*People v. Roberts* (1979), 75 Ill. 2d 1, 387 N.E.2d 331), and since this court has previously affirmed defendant's convictions on direct appeal, consideration of the self-defense and the provocation voluntary manslaughter instructions is barred by the doctrine of *res judicata.*

While, as defendant points out, strict application of the doctrine has been relaxed where a defendant's claim is based upon case law which developed after his conviction was affirmed on direct appeal (*People v. Cowherd* (1983), 114 Ill. App. 3d 894, 449 N.E.2d 589), the cases relied upon by defendant to support his argument with respect to the attempted murder instruction (*People v. Trinkle* (1977), 68 Ill. 2d 198, 369 N.E.2d 888, and *People v. Harris* (1978), 72 Ill. 2d 16, 377 N.E.2d 28), were decided prior to our decision on May 18, 1979,

in defendant's direct appeal. *Trinkle* was decided in November 1977 and *Harris* in May 1978.

██ Moreover, fundamental fairness does not otherwise compel relaxation of the application of *res judicata*. The following instructions were given on attempted murder:

"STATE'S INSTRUCTION NO. 19

A person, or one for whose conduct he is responsible, commits the crime of attempt who, with intent to commit the crime of Murder; does any act which constitutes a substantial step toward the commission of the crime of Murder. The crime attempted need not have been committed."

"STATE'S INSTRUCTION NO. 21

To sustain the charge of attempt, the State must prove the following propositions,

*First*: That the defendant Robert Bailey, or one for whose conduct he is responsible performed an act which constituted a substantial step toward the commission of the crime of Murder of John Sigle; and

*Second*: That the defendant Robert Bailey, or one for whose conduct he is responsible did so with intent to commit the crime of murder of John Sigle.

If you find from your consideration of all the evidence that each of these propositions has been proved beyond a reasonable doubt then you should find the defendant guilty. If, on the other hand, you find from your consideration of all the evidence that any of these propositions has not been proved beyond a reasonable doubt, then you should find the defendant not guilty."

"STATE'S INSTRUCTION NO. 16

A person commits the crime of murder who kills an individual if, in performing the acts which cause the death, he or one for whose conduct he is responsible, intends to kill *or do great bodily harm to that individual*; or he, or one for whose conduct he is responsible, knows that such acts will cause death to that individual; or

he, or one for whose conduct he is responsible, knows that such acts create a strong probability of death *or great bodily harm* to that individual. (Emphasis added.)"[1]

---

[1]The fact that the phrase "without lawful justification" was not inserted (see Illinois Pattern Jury Instruction, Criminal, No. 7.01 (2d ed 1981)) has no bearing on the issue presented.

Defendant argues that these instructions may have allowed the jury to convict him of attempted murder without actually finding that he had the intent to *kill* since the murder instruction, No. 16, included the alternative language "or do great bodily harm." In cases which have been decided after *Harris*, it has been established that the problem does not lie in the alternative language "intends to kill," "knows that such acts will cause death," or "knows that such acts create a strong probability of death." (See *People v. Teague* (1982), 108 Ill. App. 3d 891, 439 N.E.2d 1066, *cert. denied* (1983), 464 U.S. 867, 78 L. Ed. 2d 179, 104 S. Ct. 206; see also *People v. Morano* (1979), 69 Ill. App. 3d 580, 387 N.E.2d 816.) The objectionable language in the instruction is that portion which refers to "great bodily harm." (*People v. Teague* (1982), 108 Ill. App. 3d 891, 439 N.E.2d 1066, citing *People v. Tamayo* (1978), 73 Ill. 2d 304, 383 N.E.2d 227.) We agree that modification of the instruction by deleting that phrase is appropriate where the charge is attempted murder and defendant is not also charged with murder (see *People v. Rhodes* (1983), 119 Ill. App. 3d 1002, 457 N.E.2d 1300), but we observe that the modification would not, in itself, be appropriate here, as it would be incomplete with respect to the actual murder charge. While the instruction as given was improper, reversal is not required under the circumstances in this case. In *People v. Smith* (1984), 127 Ill. App. 3d 622, 469 N.E.2d 634, the court held, albeit in the context of waiver for failure to object at trial[2] rather than under *res judicata*, that fundamental fairness did not require an exception to the waiver doctrine where the evidence was not closely balanced and was clearly sufficient to allow the jury to infer the specific intent to kill. (See also *People v. Anderson* (1982), 108 Ill. App. 3d 563, 439 N.E.2d 65 (also referring to use of a deadly weapon as circumstantial evidence of such intent).) In *Smith*, the defendant stabbed one victim to death and another three times. Here, the murder victim was bludgeoned to death with a car jack or a tire iron and the attempted murder victim who was struck with the tire iron resulting in eye lacerations, two lacerated tendons in his hand and a fractured pelvis. We believe that, in the light thereof and because the evidence was not closely balanced, fundamental fairness does not require relaxation of the *res judicata* bar.

---

[2]We note in passing that, although defendant now argues, albeit unsupported by any reference to the record, that he did object to the attempted murder instruction, our review of the 2,000-page record before us in the direct appeal shows that his objection was a continuing general objection with respect to accountability. He neither specifically referred to this instruction in any way nor referred to the specific issue now before us.

■ Defendant next contends that his constitutional right to a fair trial was denied by the prosecution's improper closing argument and by its implication that a narcotics connection existed between defendants and the person who supplied Ursula Rumas with heroin. Such issues are within the general rule that an affirmance on direct appeal is *res judicata* as to all issues that were raised or could have been raised on appeal. (*People v. Roberts* (1979), 75 Ill. 2d 1, 387 N.E.2d 331.) We further note that these issues were raised and appear to have been fully addressed in the direct appeal. " 'The Post-Conviction Hearing Act was not intended to be used as a device to obtain another hearing upon a claim of denial of constitutional rights where there has already been a full review of the issues raised.' [Citation.]" (*People v. Gaines* (1984), 105 Ill. 2d 79, 90, 473 N.E.2d 868, 874, *cert. denied* (1985), 471 U.S. 1131, 86 L. Ed. 2d 282, 105 S. Ct. 2666.) Defendant is thus precluded from advancing these contentions at this point.

Defendant also maintains that he was denied his right to a fair trial and to due process by the prosecution's failure to comply with the disclosure requirements of Supreme Court Rule 412. Although the prosecution listed a towel found in defendant's automobile as physical evidence that it might use at trial, it did not do so, and defendant argues that the prosecution should have produced it as evidence favorable to him because it might have corroborated his self-defense theory if the bloodstains were shown to be of either his or his codefendant's blood type. This issue is also one which could have been raised on appeal, however, and it is therefore barred by *res judicata*. (*People v. Roberts* (1979), 75 Ill. 2d 1, 387 N.E.2d 331.) Furthermore, noncompliance with discovery requests does not require reversal absent a showing of prejudice (*People v. Greer* (1980), 79 Ill. 2d 103, 402 N.E.2d 203), and in the light of the prosecution's action in listing the bloody towel as physical evidence and the trial testimony which clearly showed that an altercation took place with blows exchanged between sides, we do not believe defendant was prejudiced by the prosecution's failure to characterize the towel as evidence favorable to defendant.

■ Defendant additionally argues that the trial court should not have imposed sentence where a *bona fide* doubt was raised regarding his fitness to be sentenced. We note that all information with respect to this issue was available at the time of the direct appeal and, because it could have been raised by that time, this argument is also barred by *res judicata*. (*People v. Roberts* (1979), 75 Ill. 2d 1, 387 N.E.2d 331.) Defendant, however, asserted in oral argument before

this court that the doctrine of *res judicata* does not apply to fitness for sentencing and, in support thereof, referred to *People v. Santoro* (1973), 13 Ill. App. 3d 426, 301 N.E.2d 175. Although *Santoro* stands for the proposition that "competency to stand trial is an issue of constitutional dimension and, as such, properly the subject of a petition under the Post Conviction Act" (*People v. Santoro* (1973), 301 N.E.2d 175, 177), nothing in *Santoro* even alludes to the effects of *res judicata*. Since that doctrine does apply to constitutional claims (*People v. Mengedoht* (1980), 91 Ill. App. 3d 239, 414 N.E.2d 893), we find that defendant's contention with respect to fitness for sentencing is barred by *res judicata*.

■ Moreover, the question of whether a *bona fide* doubt has been raised is a decision resting largely within the discretion of the trial court and its refusal to order a fitness hearing should only be overturned when there has been an abuse of that discretion. (*People v. Johnson* (1984), 121 Ill. App. 3d 859, 460 N.E.2d 336.) Fitness to stand trial or to be sentenced is defined as follows:

"(a) For the purposes of this Section a defendant is unable to stand trial or be sentenced if, because of a mental or physical condition, he is unable:

(1) to understand the nature and purpose of the proceedings against him; or

(2) to assist in his defense." (Ill. Rev. Stat. 1977, ch. 38, par. 1005—2—1(a); current version at Ill. Rev. Stat. 1983, ch. 38, par. 104—10.)

Factors to be considered in determining such fitness include: "counsel's assertion that defendant is unable to cooperate in his defense, prior treatment for mental disability, and defendant's demeanor ***." (*People v. Johnson* (1984), 121 Ill. App. 3d 859, 860, 460 N.E.2d 336, 338.) Here, defendant who testified extensively in his own behalf at trial had no previous history of mental disability, and it was not until the last day of the sentencing hearing, almost a month after trial that his attorney made an oral request that defendant have a psychiatric examination on the basis that defendant did not cooperate with him for purposes of sentencing. The date of a defendant's request is a fact which may be considered by the trial court in the exercise of its discretion with respect to fitness (*People v. Bickham* (1976), 39 Ill. App. 3d 358, 350 N.E.2d 351), and the trial court here specifically stated that it considered defendant's request to be dilatory tactics on the part of his attorney. Counsel's mere assertion that defendant was unable to cooperate was insufficient to raise a *bona fide* doubt regarding fitness (see *People v. Dominique* (1980), 86 Ill. App. 3d 794, 408

N.E.2d 280), and we find that the trial court's decision to proceed with the sentencing hearing did not constitute an abuse of discretion. While it did order a psychiatric examination for defendant, the mere authorization of such is not sufficient to establish a *bona fide* doubt of defendant's fitness. (*People v. Wilson* (1984), 124 Ill. App. 3d 831, 464 N.E.2d 1158.) Dr. Reifman, the examining psychiatrist, stated that he was unable to make a determination with respect to fitness for sentencing on the basis of his examination, and we note that the record does not contain a transcript of the hearing on February 1, 1977, in which his report was presented to the trial court, nor does it contain a copy of the order entered by the trial court on that day. In the absence thereof, the record shows, at most, that defendant refused to cooperate with counsel or with the court-appointed psychiatrist after his conviction. His unwillingness to cooperate, however, cannot be deemed equivalent to an inability to do so. (*People v. Pittman* (1979), 75 Ill. App. 3d 683, 394 N.E.2d 702.) The trial court had the opportunity to observe and evaluate defendant's participation in, and conduct at, his trial and, after having the same opportunity at the sentencing hearing, could compare such behavior and demeanor. At the sentencing hearing, the trial court asked defendant whether he wished to make a statement prior to pronouncement of sentence and responding appropriately, he indicated that he did not wish to do so. In addition to the *res judicata* bar, it appears to us that the trial court did not abuse its discretion in refusing to order a fitness hearing.

Defendant also posits that he was denied due process by the prosecution's use of Ursula Rumas' alleged perjured testimony. In support thereof, he relies primarily on information from Pamela Kubes' deposition in 1975 which was available to the defense both at the time of trial and for purposes of the direct appeal and *res judicata* thus precludes us from considering the alleged contradictions raised by defendant on the basis of Pamela Kubes' statement. See *People v. Orndoff* (1968), 39 Ill. 2d 96, 233 N.E.2d 378.

With respect to Ursula Rumas' testimony regarding her heroin use, defendant did submit an affidavit from James Taurisano, apparently a fellow inmate at Joliet, stating that he was in a methadone program with Ursula Rumas and Cindy Saccomanno from May 1975 to the middle of 1976. No allegation is made, however, regarding the prosecution's knowledge of this information and it is not sufficient merely to show that perjury may have occurred during the trial. Defendant must establish that the prosecution knowingly used the perjured testimony. (*People v. Berland* (1983), 115 Ill. App. 3d 272, 450 N.E.2d 979.) In *People v. Cornille* (1983), 95 Ill. 2d 497, 448

N.E.2d 857, the Illinois Supreme Court observed that, in several cases, courts have held that some lack of diligence on the prosecution's part satisfied that State action requirement of due process even though the prosecution's actual involvement did not rise to the level of knowing use and defendant here attempts to rely on the prosecutor's alleged lack of diligence in using the alleged perjury. *Cornille*, however, involved an expert witness, testifying for the prosecution in an arson trial, who deliberately falsified his qualifications. Although the court held that the prosecution's lack of diligence in knowing this constituted sufficient State involvement under the extraordinary circumstances of that case, it clearly emphasized the fact that the witness was "not merely an occurrence witness whose presence at the trial was determined by his relationship to the facts of the case" (*People v. Cornille* (1983), 95 Ill. 2d 497, 513, 448 N.E.2d 857, 865), but rather was a witness who was selected by the prosecution and whose credibility as an expert was relied upon by the prosecution to win an otherwise closely balanced case. Here, Ursula Rumas, a friend and former girlfriend of one of the defendants, accompanied them to the grill where the incident occurred and her presence was thus determined by her relationship to the case.

▮ Furthermore, while defendant complains that the alleged perjury regarding her narcotics usage seriously affected Ursula Rumas' credibility, we believe that the jury was adequately informed in that regard by her testimony that she had tried to overdose on heroin and had taken heroin "once or twice" in the past. Moreover, while drug addiction is an important factor in evaluating credibility, that concern focuses on the ability of the witness to observe, accurately reflect upon and retain what was observed, as well as the general inclination toward truthfulness (*People v. Galloway* (1974), 59 Ill. 2d 158, 319 N.E.2d 498), whatever the possible effect of her alleged former addiction on her ability to observe and retain information, it was more than overshadowed by the effect of the amount of alcohol she consumed that night. Thus the jury had before it more than enough information to cause it to be wary of Ursula Rumas' testimony and, in any event, as will be discussed in more detail when we address defendant's next contention, we do not believe the testimony of Ursula Rumas was of significance in this trial. We conclude that any error which may have occurred with respect to discrepancies in her testimony was harmless.

Defendant also referred to Cindy Saccomanno's history of drug usage but any error with respect to Cindy's testimony is certainly harmless. She did not testify about the events which occurred after

the victims left the grill because she left the area after the codefendant slapped her and knocked her to the ground.

Defendant next argues that he was denied due process where the prosecution allegedly changed Ursula Rumas, characterized by him as a defense witness, into a witness for the prosecution through abuse of the grand jury subpoena process and concealment of the witness from the defense. It is well established, however, that " '[t]he Post-Conviction Hearing Act was not intended to be used as a device to obtain another hearing upon a claim of denial of constitutional rights where there has already been a full review of the issues raised.' [Citation.]" (*People v. Gaines* (1984), 105 Ill. 2d 79, 90, 473 N.E.2d 868, 874, *cert. denied* (1985), 471 U.S. 1131, 86 L. Ed. 2d 282, 105 S. Ct. 2666.) All information concerning this argument was available at the time of the direct appeal and we note that both defendants argued on direct appeal that the prosecution induced and intimidated Ursula Rumas into changing her testimony. (See *People v. Belvedere* (1979), 72 Ill. App. 3d 998, 1015, 390 N.E.2d 1239, 1251.) In view thereof, this issue is now *res judicata*.

Defendant also contends that his right to present a defense was denied by the prosecution's coercion of Pamela Kubes and her resultant failure to appear at the trial. The information presented in this regard here was available in 1975 when Pamela Kubes' deposition was taken in the office of defendant's attorney and, since it could have been raised on the direct appeal, the issue is now also *res judicata*. (See *People v. Roberts* (1979), 75 Ill. 2d 1, 387 N.E.2d 331.) Moreover, defendant emphasizes Pamela Kubes' statement that Ursula told her immediately after the incident that defendant did not have a weapon in his hand during any part of the incident. We note no significance thereto since Ursula did not testify at trial that defendant had a weapon and both defendant and his codefendant testified that he wielded a tire iron.

■ Defendant next contends that he was denied the effective assistance of trial counsel by his attorney's failure to: (a) compel the testimony of two witnesses; (b) obtain and introduce the bloody towel previously discussed; and (c) object to the prosecution's incomplete instruction on the defense of another. We note, however, that defendant's trial counsel did not represent him in his direct appeal and, because all of the bases for his present claim of ineffective assistance of trial counsel were available to defendant at the time of his direct appeal, his contention is now *res judicata*. (See *People v. Jones* (1985), 109 Ill. 2d 19, 485 N.E.2d 363.) In the absence of any allegations, as here, which would excuse a defendant from not raising the issue in a

previous direct appeal, it is waived. (*People v. Tonaldi* (1984), 129 Ill. App. 3d 183, 472 N.E.2d 123.) However, in the light of defendant's next contention, that he was denied effective assistance of appellate counsel, a contention based partially on the failure to raise on direct appeal the ineffectiveness of his trial counsel, we will consider the issue.

A two-part standard for judging a claim of ineffective assistance of trial counsel was elucidated in *Strickland v. Washington* (1984), 466 U.S. 668, 80 L. Ed. 2d 674, 104 S. Ct. 2052, and later adopted by the Illinois Supreme Court in *People v. Albanese* (1984), 104 Ill. 2d 504, 473 N.E.2d 1246, *cert. denied* (1985), 471 U.S. 1044, 85 L. Ed. 2d 335, 105 S. Ct. 2061. That two-part standard is as follows:

"First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." *Strickland v. Washington* (1984), 466 U.S. 668, 687, 80 L. Ed. 2d 674, 693, 104 S. Ct. 2052, 2064.

■ With respect to an assessment of deficient performance, the *Strickland* court cautioned:

"Judicial scrutiny of counsel's performance must be highly deferential. *** A fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time. Because of the difficulties inherent in making the evaluation, a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; ***." (*Strickland v. Washington* (1984), 466 U.S. 668, 689, 80 L. Ed. 2d 674, 694, 104 S. Ct. 2052, 2065-66.)

Our review of the record indicates that counsel retained by defendant competently defended his client throughout the trial proceedings. His opening statement, closing argument, objections at trial, his direct and cross-examination of witnesses and motion for directed verdict indicate that he was an experienced trial lawyer. In addition to these basic functions, he filed several motions *in limine*, successfully challenged the prosecution's motion to revoke bond, moved for a mistrial several times, filed a detailed post-trial motion, and moved to vacate

the convictions based on an alleged incident at the hotel where the jurors were sequestered.

With respect to the alleged failures of counsel now advanced by defendant, it is our finding that they do not establish deficient performance. We have previously discussed the matter of the bloody towel and the testimony of Ursula Rumas and we will discuss later in this opinion the instruction issue in the context of defendant's claim of ineffective assistance of appellate counsel. On the basis thereof, we conclude that defendant has made no showing of prejudice and we find none. Moreover, defendant was also required to show, but did not, that there was "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." (*Strickland v. Washington* (1984), 466 U.S. 668, 694, 80 L. Ed. 2d 674, 698, 104 S. Ct. 2052, 2068.) Failure to make either showing defeats an ineffectiveness claim, and there is thus clearly no merit in defendant's contention that he was deprived of the effective assistance of trial counsel.

Defendant additionally contends that he received ineffective assistance of counsel on his direct appeal as a result of his counsel's failure to raise certain issues with respect to instructions. A defendant is entitled to effective assistance of counsel on a first appeal as of right. (*Evitts v. Lucey* (1985), 469 U.S. 387, 83 L. Ed. 2d 821, 105 S. Ct. 830; see also *People v. Brown* (1968), 39 Ill. 2d 307, 235 N.E.2d 562.) But counsel is not required to raise every nonfrivolous, or "colorable," claim even if the defendant specifically requests him to raise such issues. (*Jones v. Barnes* (1983), 463 U.S. 745, 77 L. Ed. 2d 987, 103 S. Ct. 3308.) In *Jones*, the court pointed out the importance of having counsel examine the record to select the most promising issues for review and also observed that "[a] brief that raises every colorable issue runs the risk of burying good arguments ***." *Jones v. Barnes* (1983), 463 U.S. 745, 753, 77 L. Ed. 2d 987, 994, 103 S. Ct. 3308, 3313.

■ After defendant's trial attorney withdrew from the appeal, Jerold S. Solovy and Christopher J. McElroy of the law firm of Jenner and Block were appointed to represent him. He agrees that numerous issues were raised by them and does not seriously question their general qualifications and competence. Instead, he argues that the omitted instruction issues[3] were much more significant than the

---

[3]Defendant also argues that an issue with respect to ineffective assistance of trial counsel should have been raised. Since we have previously discussed the performance of trial counsel and because this issue was not included in defendant's argument regarding ineffective assistance of appellate counsel in his amended post-conviction petition, we do not find that it requires further consideration.

issues actually raised on appeal and, suggesting that his appeal attorneys were not aware of the instruction issues, he implies that their failure to brief those issues could not have been a judgment call. We see no merit in his suggestion, because the instruction issues were listed in defendant's post-trial motion and his appeal attorneys later supplemented the record with the transcript from the instruction conference.

Defendant also asserts two errors with respect to instructions concerning which we initially note that "[i]t is not incompetence for counsel to refrain from raising those issues which in his judgment are without merit, unless his appraisal of the merits is patently wrong." *People v. Frank* (1971), 48 Ill. 2d 500, 505, 272 N.E.2d 25, 28; see also *People v. Bradley* (1984), 128 Ill. App. 3d 372, 470 N.E.2d 1121.

Defendant first maintains that his attorneys on appeal should have argued that the jury was erroneously instructed on self-defense where the prosecution omitted the words "of another" from the self-defense instruction. He argues that this omission critically limited his defense in that the jury was told that he could only act in his own defense and in defense of his codefendant. We note, however, that defendant did not object to this instruction, and any analysis of the merit of this issue by appellate attorneys was subject to the limits of the plain error exception to the waiver doctrine. (See *People v. Carlson* (1980), 79 Ill. 2d 564, 404 N.E.2d 233.) In order to constitute even a colorable issue for purposes of appeal, the alleged instruction error must have been of such magnitude that its commission denied the accused a fair trial (*People v. Carlson* (1980), 79 Ill. 2d 564, 404 N.E.2d 233), which, under the circumstances here, we do not believe occurred. The victim was bludgeoned to death with a tire iron or jack despite defendant's own admission that he did not see any of the members of the victim's group with a weapon. Additionally, it was only after those men had either fled or gone back to the Volkswagen that defendant and his codefendant picked up the tire iron and jack. The latter testified that because he and defendant heard one of them yell "Get the golf clubs" that he and defendant followed the two of the men to their car, which was parked about 50 to 70 feet away. While both defendants testified that they were acting in self-defense at this point, they admitted they attacked the victims without further confrontation, and we note that not only was the alleged threat by them a general threat not specifically directed at either of the two defendants, but there is also nothing indicating that the victims even had any golf clubs there. We thus do not be-

lieve that omission of the language from the instruction was particularly significant, and we find that the failure to raise such issue was not of such consequence as to constitute incompetence on the part of appellate counsel.

Defendant also argues that an issue should have been raised with respect to the trial court's refusal of defendant's provocation instruction. The "provocation" and "unreasonable belief in the necessity of self defense" theories of voluntary manslaughter require different frames of mind that cannot both be present in the same act (*People v. Goolsby* (1979), 70 Ill. App. 3d 832, 388 N.E.2d 894, *cert. denied* (1980), 445 U.S. 952, 63 L. Ed. 2d 788, 100 S. Ct. 1602), and a "deliberate act of self-defense would negative an inference of intense passion." (*People v. Clark* (1973), 15 Ill. App. 3d 756, 759, 305 N.E.2d 218.) Although it is permissible to instruct the jury as to both types of voluntary manslaughter (*People v. March* (1981), 95 Ill. App. 3d 46, 419 N.E.2d 1212), each defendant testified here that they acted in self-defense when they approached the victims' Volkswagen carrying the tire iron and the jack, and although mutual combat is sufficient to support a finding of provocation, such combat does not justify the giving of an instruction thereon where "sufficient time had lapsed between the alleged provocation and the homicide to permit the voice of reason to be heard." (*People v. Coleman* (1984), 124 Ill. App. 3d 285, 289, 464 N.E.2d 706, 709; see also *People v. Akins* (1976), 39 Ill. App. 3d 908, 351 N.E.2d 366 (a mere pause in the altercation may be sufficient to constitute a cooling-off period).) The provocation must also be proportionate to the retaliation it generates, and if a victim is attacked and killed with violence out of all proportion to the provocation, the crime is murder, not manslaughter. (*People v. Hebein* (1982), 111 Ill. App. 3d 830, 444 N.E.2d 782.) This is especially true if, as here, the homicide was committed with a deadly weapon. (*People v. Causey* (1978), 66 Ill. App. 3d 12, 383 N.E.2d 234.) Furthermore, it is not necessary for us, particularly in the context of this appeal from the dismissal of a post-conviction petition, to decide whether the instruction should have been given, because failure to do so would not necessarily constitute reversible error since any error in refusing instructions is harmless where the evidence, as here, is so clear and convincing that the jury's verdict could not have been different. *People v. Hebein* (1982), 111 Ill. App. 3d 830, 444 N.E.2d 782.

In the light of the above, we believe that any error in the refusal of the provocation instruction, if it had been tendered, would have been harmless and thus that the failure to have submitted it did not

constitute ineffective assistance of appellate counsel.

■■■ Defendant finally contends that the trial court abused its discretion when it dismissed his post-conviction petition without an evidentiary hearing. We disagree. Such a petition is properly dismissed without a hearing where the record shows that it has no merit (*People v. Gloster* (1980), 89 Ill. App. 3d 250, 411 N.E.2d 891), and since we have addressed above the merits of the majority of the issues raised by defendant in his post-conviction petition, we will confine our discussion to the issue on which an evidentiary hearing would arguably have been necessary to obtain information beyond the record—the allegedly perjured testimony of Ursula Rumas. We note that, with respect to this issue, defendant's petition included the affidavit of Pamela Kubes, who had known Ursula Rumas for over 10 years, containing allegations of prosecutorial misconduct which influenced Pamela Kubes not to testify at trial. Ms. Kubes also stated in the affidavit that if she had appeared at trial, she would have testified "to all the facts sworn to in my November 6, 1975 statement ***." Initially, we note that the 1975 statement was attached to the post-conviction petition and was available to the trial court when it considered the petition. We thus believe that the trial court properly dismissed the petition on the record before it on the basis of *res judicata. People v. Roberts* (1979), 75 Ill. 2d 1, 387 N.E.2d 331.

In summary, the issues which were not barred by *res judicata* were harmless error in the light of defendants' own testimony, and the alleged errors on the part of appellate counsel, if any, did not rise to the level of ineffective assistance of appellate counsel.

For the aforementioned reasons, the trial court's dismissal of the amended post-conviction petition is affirmed.

Affirmed.

PINCHAM and LORENZ, JJ., concur.