THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. CLAY SCOTT CLARK, Defendant-Appellant.

Third District   No. 3—87—0271

Opinion filed January 12, 1988.

Peter A. Carusona, of State Appellate Defender's Office, of Ottawa, for appellant.

Edward Petka, State's Attorney, of Joliet (Howard R. Wertz, of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People.

JUSTICE STOUDER delivered the opinion of the court:

A jury convicted the defendant, Clay Scott Clark, of murder. (Ill. Rev. Stat. 1985, ch. 38, par. 9—1(a).) The court sentenced him to a 26-year term of imprisonment. The defendant appeals, arguing: (1) that the State failed to prove him guilty beyond a reasonable doubt; (2) that the court erroneously failed to instruct the jury *sua sponte* on voluntary manslaughter; and (3) that the court deprived him of due process by not instructing the jury on the State's burden to negate both the defendant's belief that he acted in self-defense and that the defendant acted under sudden, intense passion.

Late on the evening of July 3, 1986, at least 20 individuals gathered around a bonfire at "the Pit" to celebrate Independence Day. The defendant arrived after 10 p.m., and Michael Pegram arrived after midnight. At that time Pegram's face and cheek were bruised from an altercation the previous night. Five witnesses knew of Pegram's past, sporadic involvement in fights but considered him nonviolent. A lengthy, heated argument ensued between newly acquainted Pegram and the defendant. David Ward saw each smack the other's hand. Raymond Wenke heard the defendant ignore Pegram's request that he leave. Suddenly, Pegram struck the defendant's nose. The defendant fell but stood up to punch Pegram's chest. The defendant stabbed Pegram. When Pegram fell, Kelly Ward smacked him with her crutch and the defendant punched his back twice. Pegram ran.

The defendant twice threatened Pegram's life and chased Pegram. Ron Walls ran after the defendant and caught him with a bloody knife. Ward and Walls dragged the defendant back to Ward's car. The defendant was wild. After Walls punched the defendant three times, the defendant admitted that he had killed Pegram. The group then searched at least 30 minutes before discovering Pegram in a nearby gully. When the defendant saw Pegram, he poked him with a crutch and told him to "[g]et up so I can finish you off."

The blood on the knife hilt could have been Pegram's. Blood saturated Pegram's shirt and spotted his other clothes and shoes. When the group found him, Pegram had no pulse. He was never revived.

While performing the autopsy, Dr. Lawrence Blum detected bruises over the deceased's left eye and on his right forehead, right cheek, right temple and right eyebrow. He noted that various other, possibly prior, bodily scrapes were healing. The deceased also had a six-inch incised wound from his mid-front neck base to his right

breast, two other nonpenetrating chest wounds, and two left chest stab wounds. The largest wound only penetrated the muscle and subcutaneous fat. A more serious smaller wound began at the front fifth rib, entered the breast cavity and pierced both the heart covering and the heart muscle. In Dr. Blum's opinion, blood had accumulated around Pegram's heart and his left lung and his heart had collapsed. Dr. Blum added that after the fatal stabbing Pegram could have run 50 feet, as death was not instantaneous and he was conscious until the onset of shock. Dr. Blum concluded that Pegram died of hemorrhage and shock due to internal bleeding from his pierced heart.

After the incident, the defendant's face was bruised; his left eye and lips were swollen; and his upper left teeth were loose due to a blunt blow to his mouth. He explained to Will County deputy Charles Malinowski that Pegram had called his girlfriend, Kelly Ward, foul names before striking the defendant's eye and mouth. The angered defendant then poked Pegram's stomach with his knife and, when Pegram came after him, he poked Pegram's chest two more times. When Pegram ran, the defendant chased him and again poked Pegram's left shoulder. According to the defendant's statement, he had known that Pegram was hurt and he had lost his head.

According to the defense, the defendant met Pegram that night at approximately 1 a.m. As they conversed, Pegram spoke rudely to Kelly Ward and then threatened to rip his heart out. Pegram poked the defendant's chest and their conversation ignited. The defendant was afraid, so he took a knife from Ward's vehicle. Pegram laughed when the defendant asked him to leave him and Ward alone. The defendant started to walk away. Pegram struck the defendant's head. The defendant fell. As they struggled, Pegram punched the defendant. As the defendant again tried to rise, Pegram struck him. The defendant stabbed Pegram. Pegram struck the defendant twice and lunged toward him. The defendant again stabbed Pegram. The defendant chased Pegram 50 yards but then became afraid and ran away. The defendant intended only to scare Pegram, not to kill him.

Initially, we address the defendant's argument that due to his claimed self-defense and evidence of acts of sudden, intense passion, the court was *sua sponte* obliged to give a voluntary manslaughter instruction based on unreasonable belief. Alternatively, the defendant urges this court to consider the absence of the instruction as a substantial defect pursuant to Supreme Court Rule 451(c) (107 Ill. 2d R. 451(c)), and to find his trial counsel ineffective. The State responds that the defendant, assisted by effective counsel, waived the issue by deliberately not requesting the instruction. We agree.

At the conference on jury instructions, the court agreed with the defendant that self-defense was applicable. The defendant's counsel then indicated that they had discussed, but the defendant had chosen not to tender, a voluntary manslaughter instruction. The court honored this decision and later instructed the jury on the elements of murder and justifiable use of force.

When the defendant argued his post-trial motion, he suggested that the close facts tended to establish the victim as the aggressor. He concluded that justice demanded a voluntary manslaughter conviction. The court acknowledged that the instruction could have affected the verdict but that the defendant's poorly chosen trial strategy was not to give the voluntary manslaughter instruction.

■ It is axiomatic that a jury ought to be instructed on the law applicable to the facts. An exception is carved, however, for parties who deliberately delineate the issues with full awareness of the alternatives, provided the given instructions are supported by the evidence. In that event, the court is not bound to instruct on voluntary manslaughter over the defendant's objection. *People v. Rosas* (1977), 52 Ill. App. 3d 555, 367 N.E.2d 986.

■ After consulting his counsel, the defendant chose not to offer a voluntary manslaughter instruction. The defendant invited the jury to determine whether he was either guilty of murder or innocent due to his reasonable belief that his use of force was justified. He, therefore, cannot now successfully raise the alleged error. (See *People v. Gutierrez* (1987), 156 Ill. App. 3d 555, 509 N.E.2d 787.) As the court aptly stated in response to the defendant's complaint in hindsight that the instruction was not given, the defendant "wanted all or nothing. He gambled. Trial strategy. He lost."

■ It appears that the court would have entertained the proffered instruction. The defendant, however, strategically elected to forego that instruction. His posture is, therefore, analogous to a defendant complaining that the court gave a State instruction over his objection. The court simply deferred to the defendant's adamant request. Hence, under these circumstances, the court had no obligation to instruct *sua sponte* and did not deprive the jury of essential guidance in evaluating the evidence. See *People v. Parks* (1976), 65 Ill. 2d 132, 357 N.E.2d 487.

Parenthetically, we find neither grave error that convinces us to invoke the Rule 451(c) exception (see *People v. Burns* (1986), 144 Ill. App. 3d 345, 494 N.E.2d 872), nor that the defendant's attitude, belief in his truthful testimony and chosen trial strategy were attributable to ineffective counsel. See *People v. Berger* (1982), 109 Ill. App.

3d 1054, 441 N.E.2d 915; *People v. Bailey* (1986), 141 Ill. App. 3d 1090, 490 N.E.2d 1334.

We next address the defendant's argument that the court violated his due process rights by not instructing the jury pursuant to *People v. Bolden* (1985), 132 Ill. App. 3d 1047, 477 N.E.2d 1380, of the State's burden to negate both his unreasonable belief in self-defense and his sudden, intense passion. The State suggests that the defendant waived consideration of the issue. We agree.

■■ ■ Failure to tender a proper instruction results in waiver of objections concerning lack of proper instruction, unless the case was factually close and errors that threatened fundamental fairness occurred in the defendant's trial. (*People v. Burns* (1986), 144 Ill. App. 3d 345, 494 N.E.2d 872.) We acknowledge both the State's burden to negate and the court's corresponding obligation, on request, to instruct on elements of voluntary manslaughter. (*People v. Bolden* (1985), 132 Ill. App. 3d 1047, 477 N.E.2d 1380.) However, under these circumstances, as previously discussed, we decline to find the manslaughter instruction so essential that the court was bound to give it. (See *People v. Burns* (1986), 144 Ill. App. 3d 345, 494 N.E.2d 872.) Consequently, we believe the defendant clearly waived any alleged error in the court's failure to give a *Bolden* instruction.

Lastly, we address the defendant's argument that his murder conviction should be reduced to voluntary manslaughter because either he believed he acted in self-defense or he acted under sudden, intense passion. The State responds that this court has no authority to address the issue, as the defendant precluded the manslaughter alternative. Alternatively, the State contends that the defendant's guilt was established beyond a reasonable doubt because the defendant initiated the confrontation; time passed; and the defendant's retaliation with a deadly weapon was disproportionate to the provocation.

■■ ■ A person who kills an individual without lawful justification commits murder if in performing the acts which cause the death he either intends to kill or do great bodily harm to that individual or knows that such acts will cause the individual's death. (Ill. Rev. Stat. 1985, ch. 38, par. 9—1(a)(1).) On the other hand, a person commits voluntary manslaughter if he kills an individual without lawful justification while acting under either sudden, intense passion due to serious provocation or an unreasonable belief that force justifiably prevented imminent death or great bodily harm to himself. (Ill. Rev. Stat. 1985, ch. 38, pars. 9—2, 7—1.) Thus, the requisite intent and knowledge for murder can be mitigated by either unreasonable belief in the necessity of self-defense or passion. When a defendant intro-

duces such mitigating evidence, the State must negate the elements of voluntary manslaughter. *People v. Bolden* (1985), 132 Ill. App. 3d 1047, 477 N.E.2d 1380.

The jury determines whether a mutual quarrel supports a finding of serious provocation (*People v. Goolsby* (1977), 45 Ill. App. 3d 441, 359 N.E.2d 871) and whether a defendant acted in self-defense (*People v. March* (1981), 95 Ill. App. 3d 46, 419 N.E.2d 1212). The provocation must be proportionate to the retaliation. If a victim is attacked and violently killed by actions disproportionate to the provocation, the crime is murder, not manslaughter. *People v. Bailey* (1986), 141 Ill. App. 3d 1090, 490 N.E.2d 1334.

This court reviews the evidence most favorably to the prosecution and determines whether any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. (*People v. Sanchez* (1986), 115 Ill. 2d 238, 503 N.E.2d 277.) If, due to self-defense, the record leaves grave and substantial doubt of guilt, the judgment will be reversed. *People v. Lewellen* (1969), 43 Ill. 2d 74, 250 N.E.2d 651.

■ During their heated argument and physical struggle, both the defendant and Pegram struck each other. The defendant left momentarily but returned armed with a knife. When their scuffle continued, the defendant repeatedly stabbed the victim and then chased him. Even after Pegram's death, the defendant poked him and remained willing to "finish the job." We find that the jury appropriately determined, within the confines of the defendant's chosen instructions, that the defendant intentionally and knowingly murdered Pegram. Based on the circumstances of the offense, the jury could have believed that the defendant was insufficiently provoked to necessitate his use of deadly force. We thus find no reasonable doubt which warrants disturbing the defendant's murder conviction.

Accordingly, the judgment of the circuit court of Will County is affirmed.

Affirmed.

HEIPLE and SCOTT, JJ., concur.